**SIGNED THIS: June 16, 2009**

_____
                  **THOMAS L. PERKINS**
**UNITED STATES CHIEF BANKRUPTCY JUDGE**

_____

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF ILLINOIS**

| | |
|---|---|
| IN RE: | ) |
| | ) |
| **RENETTE CLEMONS,** | )     No. 08-82968 |
| | ) |
|                   Debtor. | ) |

# O P I N I O N

The matter before the Court is the confirmation of the Amended Chapter 13 Plan filed by the Debtor, Renette Clemons (DEBTOR), and the objection by Michael D. Clark, Chapter 13 Trustee (TRUSTEE). The issue concerns whether a marital adjustment may be claimed for mortgage related expenses for which the debtor is not contractually liable.

The DEBTOR filed a petition under Chapter 13 of the Bankruptcy Code on October 30, 2008. Her husband did not join with the DEBTOR in filing the bankruptcy petition. The DEBTOR and her daughter reside in a residence which is solely owned by her husband.[1]

---

[1] The DEBTOR made this representation at the confirmation hearing and the Court accepts it as true. Schedule A, which lists the DEBTOR as having a fee simple interest in the residence, is in error. The column for married debtors to indicate whether the real estate was singly or jointly owned was left blank. Schedule D is likewise in error. It lists both the first and second mortgages held by Great Lakes, and the DEBTOR'S husband is listed as a codebtor on those mortgages. Exacerbating the mistakes, the DEBTOR stated at the hearing that she was not a party to the first mortgage. Fortunately for the Court, Great Lakes filed proofs of claim for each obligation. The DEBTOR is not obligated on either

Her husband is in the military and is stationed out-of-state. He joins them on the weekends.[2] The DEBTOR has no nonexempt personal property and has no secured creditors. She listed unsecured claims consisting of personal loans and credit card debt totaling $34,149.23.[3] On Schedule I, the DEBTOR listed combined average monthly income of $6,386.36. Schedule J lists monthly expenses totaling $6,236.36, including the payments on the first and second mortgages of $748.87 and $329.65, respectively, real estate taxes of $189.01, and her husband's credit card payments of $900. According to Schedules I and J, the DEBTOR has monthly net income of $150.00 available to fund a plan.

Official Form 22C, Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income, filed by the DEBTOR, discloses total monthly income of $7,305.16, of which amount $1,700.09 is attributed to the DEBTOR'S employment and $5,605.07 to that of her spouse. In calculating the applicable commitment period for the plan, the DEBTOR (probably erroneously) took no marital adjustment on line 13. Because the DEBTOR'S annualized current monthly income on line 15 exceeds the applicable median family income of $66,189 on line 16, Form 22C, she must propose a five-year plan. In determining the amount of her disposable income, the DEBTOR did take a marital adjustment of $2,239.48 on line 19, consisting of her spouse's insurance deductions of $71.95, first and second mortgage payments and real estate taxes of $1,267.53 and his credit card payments of $900. The DEBTOR reported annualized

---

note. While the DEBTOR signed both mortgages, the effect of her signature is only to waive her homestead interest and does not create any liability on her behalf.

[2]Schedule J includes an expense of $65 for rent for the DEBTOR'S husband, "when he is working out of town."

[3]The claims bar date for creditors has now passed. Unsecured claims total $32,860.82.

income of $60,788.16, on line 21, which is less than the applicable median income of $66,189. Based on Form 22C, as filed, the DEBTOR'S expenses are to be determined by Schedule J, and not by the means test.

The DEBTOR filed an Amended Plan proposing payments of $150 per month for 36 months. The Amended Plan provides for "surrender" of the second mortgage. According to the DEBTOR'S estimation, unsecured creditors will receive approximately 8%.[4] At the confirmation hearing, the TRUSTEE objected to the Amended Plan based on the marital adjustment taken by the DEBTOR on Form 22C. In response to the Court's inquiry regarding the DEBTOR'S intent behind the proposed "surrender," the DEBTOR explained that she was not on the title to the residence nor was she on the first mortgage, but that she was a codebtor on the second mortgage. By "surrendering" the mortgage, the DEBTOR apparently perceives that she is foisting her misconceived liability solely upon her husband, in substantiation of the claimed means test marital adjustment.[5]

No evidence was presented. The matter was taken under advisement and the parties were given an opportunity to submit authority in support of their positions. The TRUSTEE filed a written objection, asserting that the Amended Plan filed by the DEBTOR fails to commit all of her projected disposable income to fund the plan as required by Section 1325(b)(3), in that the claimed marital adjustment is improper. The TRUSTEE submitted a brief in support of his position, but the DEBTOR declined to do so.

---

[4]The original plan provided for a term of sixty months. Under the amended plan, $2,760 is available for distribution to unsecured creditors.

[5]While a debtor may choose to "surrender" property securing a claim to the holder of the claim, the same may not be said for the accompanying debt. *See* 11 U.S.C. § 1325(5)(c).

3

The TRUSTEE presents his objection as having two prongs, one directed to the term of the DEBTOR'S plan and the other to the amount of the DEBTOR'S payments. Both issues involve the Marital Adjustment. First, the TRUSTEE contends that the amount of the marital deduction taken by the DEBTOR on line 19 of Form 22C, is improper. The TRUSTEE does not object to the marital adjustment taken for income attributable to payment of the insurance premium or the credit card debts, provided that the DEBTOR submits documentation in support of those exclusions.[6] The focus of the TRUSTEE'S objection is the marital adjustment taken for the income attributable to payment of the first and second mortgages and the real estate taxes on the marital residence. Contending that those payments associated with the mortgage on the property in which the DEBTOR and her daughter reside, are clearly amounts paid "on a regular basis for the household expenses" of the DEBTOR and her dependent, the TRUSTEE deems it irrelevant whether the DEBTOR has an ownership interest in the real estate or any liability on the mortgages.

Second, based upon the DEBTOR'S completed Form 22C, the TRUSTEE contends that she is required by Section 1325(b)(4)(A)(ii)(II) to propose a 60-month plan. Although the DEBTOR took a Marital Adjustment on line 19, in determining her disposable income, she failed to take such a deduction on line 13, in calculating the applicable commitment period. Whether the DEBTOR'S failure to take the Marital Adjustment in determining the applicable commitment period was deliberate, based upon her interpretation of the statute, or due to mistake or mere inadvertence, the Court will not hold her to it. Although the

---

[6]Specifically, the TRUSTEE requests both proof that the insurance policy covers only the DEBTOR'S husband and not the DEBTOR or the dependents of the DEBTOR and that the DEBTOR has no liability for the credit card obligations of her husband.

TRUSTEE'S position does not appear to be that the DEBTOR is required to include the entire amount of both her and her spouse's income as a matter of law, the plausibility of that construction of the statute merits discussion.[7]

>   Section 1325(b)(4)(A)(ii) defines the "applicable commitment period" to be
>
>> (ii) not less than 5 years, if the current monthly income of the debtor and the debtor's spouse combined, when multiplied by 12, is not less than–
>> \* \* \*
>>> (II) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals . . . .

The incongruity between this provision and the statutory definition of "current monthly income" has been discussed by several courts. Because the definition of "current monthly income" is framed only in terms of the "debtor," a non-filing spouse has no current monthly income. As pointed out in *In re Johnson*, 400 B.R. 639 (Bankr.N.D.Ill. 2009), Official Form 22C remedies this discrepancy by first calling for a separate statement of the "current monthly income" of the non-filing spouse as if a separate bankruptcy had been filed and then providing for a subtraction to the debtor for the amount of income not regularly paid for the household expenses of the debtor and the debtor's dependents. The overwhelming majority of courts addressing this conundrum have concluded that because a non-filing spouse has no current monthly income as statutorily defined, the same computation which governs the determination of the debtor's disposable income for plan payment purposes governs the determination of the applicable plan term.[8] *In re Stansell,* 395 B.R. 457 (Bankr.D.Idaho 2008); *In re Borders*, 2008 WL 1925190 (Bankr.S.D.Ala. 2008); *In re Dugan,*

---

[7]The TRUSTEE does not base his argument on the language of the statute nor does he cite any cases in support of his position.

[8]In addition, the portion of income that the non-filing spouse regularly contributes towards household expenses is already included in the debtor's current monthly income by definition. 11 U.S.C. § 101(10A)(B).

5

2008 WL 3558217 (Bankr.D.Kan. 2008); *In re Grubbs*, 2007 WL 4418146 (Bankr.E.D.Va. 2007); *In re Hall,* 2007 WL 445517 (Bankr.C.D.Ill. 2007) (Gorman, J.); *In re Quarterman*, 342 B.R. 647 (Bankr.M.D.Fla. 2006); *Contra In re Ariyaserbsiri*, 2008 WL 5191200 (Bankr.E.D.Tex. 2008). This Court finds the majority decisions to be well-reasoned and adopts the rationale of those courts.

Prior to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), which became effective on October 17, 2005, the determination of a debtor's disposable income, triggered by the filing of an objection by the trustee or an unsecured creditor, was made on a case-by-case basis, dependent on an evaluation of the totality of the circumstances. Disposable income was defined as "income which is received by the debtor and which is not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor.[9] 11 U.S.C. § 1325(b)(2)(A) (2004). *See In re Smith*, 286 F.3d 461 (7th Cir. 2002). The majority of courts required a non-debtor spouse's income and expenses to be included in determining whether a Chapter 13 debtor met the disposable income test.[10] *In re Carpenter*, 318 B.R. 645 (Bankr.E.D.Va. 2003); *In re Bottelberghe*, 253 B.R. 256 (Bankr.D.Minn. 2000); *In re McNichols*, 249 B.R. 160 (Bankr.N.D.Ill. 2000); *In re Ehret*, 238 B.R. 85 (Bankr.D.N.J. 1999). Courts reasoned that the failure to include such income would in effect require creditors to subsidize, at least in part, the

---

[9] For debtors engaged in business, the statute also excluded from the definition, "the payment of expenditures necessary for the continuation, preservation, and operation of such business." 11 U.S.C. § 1325(b)(2)(B) (2004).

[10] A Chapter 13 debtor was required by Federal Rule of Bankruptcy Procedure 1007(b)(1) to file "a schedule of current income and expenditures . . . prepared as prescribed by the appropriate Official Form." The instructions to the Official Form for Schedule I - Current Income Individual Debtor(s) provided:

> The column labeled "Spouse" must be completed in all cases filed by joint debtors and by a married debtor in a chapter 12 or 13 case whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.

nondebtor spouse's living expenses. *In re Schnabel*, 153 B.R. 809 (Bankr.N.D.Ill. 1993); *Ehret*, 238 B.R. at 88. Schedules I and J served as the sole framework for the calculation of disposable income. *In re Davis*, 392 B.R. 132 (Bankr.E.D.Pa. 2008). Modifications were made by the court, where the expenses claimed were not substantiated, or were determined to be unreasonable, unnecessary or excessive. *In re Burbank*, 401 B.R. 67 (Bankr.D.R.I. 2009).

BAPCPA dramatically changed the computation of the income side of the disposable income equation for all debtors.[11] Moreover, it specifically addresses the extent to which a non-debtor spouse's income is attributed to the debtor for purposes of calculating disposable income. *In re Charles*, 375 B.R. 338 (Banrk.E.D.Tex. 2007). BAPCPA introduced the term "current monthly income," which is comprised of two parts. The first is defined in Section 101(10A)(A) as the average monthly income received by the debtor, or in a joint case the debtor and the debtor's spouse, during the six month period prior to filing for bankruptcy relief. 11 U.S.C. § 101(10A)(A). Section 101(10A)(B) of the Bankruptcy Code, defines the second component to include:

> [A]ny amount paid by any entity other than the debtor (or in a joint case the debtor and the debtor's spouse), on a regular basis for the household expenses of the debtor or the debtor's dependents (and in a joint case the debtor's spouse if not otherwise a dependent), but excludes [social security benefits and certain payments to victims of terrorism, war crimes, and crimes against humanity].

In apparent recognition that not all married couples adhere to the traditional model of an economic partnership, the income of a non-filing spouse is included only to the extent that

---

[11] Not all courts agree that a debtor's "disposable income" as calculated on Form 22C equates with the debtor's "projected disposable income." *See In re Frederickson*, 545 F.3d 652 (8th Cir. 2008) (Form 22C calculation is only a "starting point"); *In re Kagenveama*, 541 F.3d 868 (9th Cir. 2008) ("projected disposable income" is equal to the disposable income calculated on Form 22C multiplied by the number of months in the applicable commitment period). In *In re Greer*, 388 B.R. 889 (Bankr.C.D.Ill. 2008), this Court sided with those courts that hold the Form 22C calculation to be dispositive.

it is regularly paid for the household expenses of the debtor or the debtor's dependents. *See In re Welch*, 347 B.R. 247 (Bankr.W.D.Mich. 2006)(characterizing treatment of all couples as marital unit with pooled income and shared expenses as outdated). Thus, under the statute, a non-filing spouse's income is divided into two parts: income that is regularly contributed for the support of the debtor and dependents, and income that is not regularly contributed, with regular contributions by the non-filing spouse being treated no differently from contributions by any other third party.[12]

The means test forms, promulgated by the Committee on Rules of Practice and Procedure of the Judicial Conference of the United States, treat contributions from a spouse differently from those by a third party. In Part I, line 7, a debtor is instructed to include any amounts regularly paid by a nonspouse for the household expenses of the debtor or the debtor's dependents. In contrast, all of the income of a spouse is included, in Part I, Column B, in calculating the debtor's current monthly income, but a deduction, referred to as a "marital adjustment," is permitted for that portion of a non-debtor spouse's income that is not paid on a regular basis for the household expenses of the debtor or the debtor's dependents.

Though the Bankruptcy Code does not define the term "household expenses," mortgage related expenses and rent payments are unquestionably encompassed within the term, along with food, clothing, utilities, car payments, and insurance.[13] Ordinarily, the

---

[12]Courts have suggested that an "unfair" allocation of household expenses between a debtor and a non-filing spouse remains subject to challenge on the grounds of good faith. *In re Lopes*, 2008 WL 3893707 (Bankr.D.Mass. 2008); *In re Louviere*, 389 B.R. 502 (Bankr.E.D.Tex. 2008).

[13]Schedule J, framed in terms of "current expenditures" serves as a guide in this regard. In addition, the expense categories under the National and Local Standards which are set forth in Form 22C provide direction.

determination of the amounts paid on a regular basis for the debtor's household expenses is a fact-specific inquiry. Here, there is no dispute that the mortgage related expenses were paid by the DEBTOR'S non-filing spouse. The statute, however, requires inclusion of amounts regularly "paid" for the "household expenses of the debtor or the debtor's dependents (and in a joint case the debtor's spouse if not otherwise a dependent)." Based on the language of the statute, contributions are limited to amounts paid for expenses actually incurred by a debtor or a dependent. A "constructive" contribution for a standardized expense allowed an above median debtor where no actual expense is incurred is not attributable to the debtor.[14] Moreover, it is clear from the wording of the statute that a debtor and the debtor's spouse are no longer presumed to be mutually dependent but that the statute carries a dependency-in-fact requirement. The DEBTOR'S spouse is not a dependent.

The assumption underlying the means test is that after deducting certain allowances for living expenses (both standardized and actual) and payment of secured and priority debt, the remaining disposable income, as calculated, will actually be available to pay general, unsecured creditors. The TRUSTEE'S position presents a very practical difficulty in its application.[15] Because the DEBTOR'S calculation of her current monthly income was less than the applicable median income, she did not complete the expense deduction calculations provided by Form 22C. Assuming, however, for purposes of illustration, that

---

[14] Under this Court's ruling in *In re White*, 382 B.R. 751 (Bankr.C.D.Ill. 2008), a Chapter 13 above median debtor is entitled to take an ownership expense deduction for a vehicle which is unencumbered. This Court concluded that the standard expense allowances for vehicle ownership, housing and utilities are entitlements, available to debtors without regard to actual payment. The Seventh Circuit reached the same conclusion in a Chapter 7 case. *In re Ross-Tousey,* 549 F.3d 1148 (7th Cir. 2008).

[15] Neither the TRUSTEE nor the DEBTOR appear to have considered the ultimate effect of a marital adjustment upon the DEBTOR'S disposable income. Because statutory construction is a holistic endeavor, the Court must consider the entire statute, as well as its objective and underlying policy.

9

the TRUSTEE is correct, the DEBTOR would be required to add $4,633.12 to her income of $1,700.09, making her current monthly income $6,333.21. Her annualized current monthly income would equal $75,998.52, in excess of the applicable median family income of $66,189. As an above median debtor, her allowed expense deductions would be determined in accordance with subparagraphs (A) and (B) of Section 707(b)(2), requiring the debtor to complete the expense deduction calculations provided by the remainder of Form 22C.[16] In doing so, the DEBTOR would not be entitled to deduct the mortgage related expenses of $1,267.53 as a payment on a secured claim, because she is not contractually obligated to make the payment. Rather, the DEBTOR would be limited to the local standard deduction for mortgage/rent expense of $695. As a result, her disposable income would be artificially inflated by $572.53.

In this Court's view, it is not appropriate to construe the term "household expenses of the debtor or the debtor's dependents" as including mortgage related expenses on which the debtor has no contractual liability. In *In re Shahan*, 367 B.R. 732 (Bankr.D.Kan. 2007), the court determined that mortgage payments made by the debtor-husband's non-filing spouse on a home which was titled in her name alone and payments which she made on a vehicle which was titled only in her name, were neither payments on debts secured by assets of the estate nor claims against the debtor and were not in fact amounts paid on a regular basis for household expenses "of the debtor." Despite the fact that the house and the car were undoubtedly assets of the debtor's "household," the court noted that attributing the spouse's income for payment of those debts to the debtor would put the

---

[16]Because the DEBTOR'S calculated annualized current monthly income was below the state median, the remainder of her form is blank. No attempt is being made to predict the DEBTOR'S disposable income and no conclusions are drawn regarding that figure.

10

non-filing spouse in a worse financial position than if she had joined her spouse in the bankruptcy petition. The Court agrees with the court's reasoning in *Shahan*. *See, also, In re Sale*, 397 B.R. 281 (Bankr.M.D.N.C. 2007) (in a Chapter 7 case, allowing a marital adjustment for car payments made by the non-filing spouse on vehicles titled in her own name).

Accordingly, the DEBTOR is entitled to a marital adjustment for the mortgage payments and real estate taxes on both lines 13 and 19 on Form 22C and the TRUSTEE'S objections to confirmation, to that extent, are overruled. A continued confirmation hearing will be scheduled to determine whether the TRUSTEE received satisfactory information corroborating the other marital adjustments.

This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate Order will be entered.

###